IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MAURICE MONTGOMERY, an individual

Plaintiff,

v.

COVENTRY HEALTH CARE, INC.; HOWARD'S
VALU RITE PHARMACY a/k/a HOWARD'S
DRUGS; and JACOB HOWARD,

Defendants.

Civ. No. 12-131-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Maurice Montgomery commenced this action by filing a *pro se* Complaint (#2) against defendants on January 24, 2012. Plaintiff has also filed a motion (#1) to proceed *in forma pauperis*. For the reasons stated below, the Complaint should be dismissed with prejudice and without leave to amend, and the motion to proceed *in forma pauperis* should be denied as moot.

**MOTION TO PROCEED IFP**

All parties instituting any civil action, suit, or proceeding in a district court, except an application for writ of habeas corpus, must pay a filing fee of $350. *See* 28 U.S.C. § 1914(a). However, a federal court may authorize the commencement of an action without the prepayment

Page 1 – REPORT AND RECOMMENDATION

of fees if the party submits an affidavit, including a statement of assets, showing that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a); *see* Rodriguez v. Cook, 169 F.3d 1176, 1177 (9th Cir. 1999). A request to proceed *in forma pauperis* must "include a statement of all assets" and declare "that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1).

In his Complaint, plaintiff Maurice Montgomery ("Montgomery") alleges that he is "a retired construction worker and farmer." (Compl., pp. 1). In his application to proceed *in forma pauperis*, Montgomery attests that he is currently unemployed, has not worked since 1999, and that he receives a monthly pension in the amount of $384.17 and, starting in 2012, receives monthly social security benefits in the amount of $1,430. (Appl. Proceed Without Prepayment of Fees & Aff. ("IFP"), Dckt. # 1). He further attests that he has no savings, no other income or investments, no assets or property, and no dependents. (Id.). His application does not provide any information regarding his expenses.

Though a litigant is not required to show that she is completely destitute in order to qualify as indigent within the meaning of 28 U.S.C. § 1915(a), Adkins v. E.I. Du Pont de Nemours & Co., 335 U.S. 331, 339, 69 S.Ct. 85 (1948), Montgomery's declaration of $1,814.17 of monthly income and no expenses is evidence tending to show that he can afford to pay the $350.00 filing fee in this case. However, since there is simply no information regarding expenses, the court is unable to determine Montgomery's true financial status. Grants or denials of applications to proceed *in forma pauperis* are left to the discretion of federal district courts. *See* Dillard v. Liberty Loan Corp., 626 F.2d 363, 364 (4th Cir. 1980). The "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." Brewster v. N. Am. Van Lines, Inc., 461 F.2d 649, 651

Page 2 – REPORT AND RECOMMENDATION

(7th Cir.1972). Montgomery has not established that he is impoverished, and his application suggests that he is capable of paying the filing fee in this case. However, because Montgomery's Complaint is legally frivolous and therefore subject to dismissal, as described below, the court recommends that his application to proceed *in forma pauperis* be denied as moot.

## INITIAL SCREENING PER 28 U.S.C. § 1915(e)(2)(B)

### I. Standard

Notwithstanding a plaintiff's indigence, the Court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the *sua sponte* dismissal of any case it finds "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); Lopez v. Smith, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (noting that 28 U.S.C. § 1915(e) "not only permits but requires" the court to *sua sponte* dismiss an IFP complaint that fails to state a claim); Rodriguez v. Cook, 169 F.3d 1176, 1178 n. 2 (9th Cir. 1999) (28 U.S.C. § 1915(e)(2)(B) has been upheld as constitutional by the only circuit to address the question of its constitutionality).

Before its amendment by the PLRA, former 28 U.S.C. § 1915(d) permitted *sua sponte* dismissal of only frivolous and malicious claims. Lopez, 203 F.3d at 1130. However, as amended, 28 U.S.C. § 1915(e)(2) mandates that the court reviewing an action filed pursuant to the IFP provisions of § 1915 make and rule on its own motion to dismiss before directing the U.S. Marshal to effect service pursuant to Federal Rule of Civil Procedure 4(c)(3). *See* id. at 1127; Calhoun, 254 F.3d at 845; McGore v. Wrigglesworth, 114 F.3d 601, 604–05 (6th Cir.

1997) (stating that sua sponte screening pursuant to § 1915 should occur "before service of process is made on the opposing parties").

## II. Discussion

As an initial matter, the court notes that Montgomery has failed to identify the basis for this court's jurisdiction over his claim. "*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (*citing* Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972)). Where a plaintiff is proceeding *pro se*, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *See* Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003) (internal citations omitted). However, *pro se* pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's Complaint identifies the action as "Violation of the Medicare Prescription Drug Benefit of January 28, 2005." Plaintiff alleges that defendant Coventry Health Care, Inc. ("Coventry") "is a sponsor/contractor signatory with the United States government to provide Type D Medicare pharmacy drugs," and that Coventry "completely violated the Type D Drug program by failing to provide [him] . . . with any of the protection allowed by the Type D Drug program." However, other than a statement that Coventry is culpable of "fraud, waste and abuse," it is entirely unclear what Coventry has allegedly done or failed to do. Plaintiff further alleges that defendant Howard's Valu Rite Pharmacy a/k/a Howard's Drugs ("Howard's Drugs") has a contract with Coventry as a "first downstream tier provider of Type D drugs," and that Howard's Drugs violated "the Type D enrollee prescription drug program" by refusing to fill plaintiff's prescriptions, allegedly stating that plaintiff is "a pain in the butt." Finally, plaintiff

alleges that he is a "Type D enrollee." From these allegations, it appears to the court that plaintiff is attempting to state a claim under Part D of the Medicare Act.

Title XVIII of the Social Security Act of 1935, 42 U.S.C. §§ 1395-1395ggg, commonly referred to as the Medicare Act, "establishe[d] a federally subsidized health insurance program for elderly and disabled persons." Ass'n of Am. Med. Colls. v. U.S., 217 F.3d 770, 774 (9th Cir. 2000) (*citing* 42 U.S.C. § 1395). In 2003, the Medicare Act was amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified in scattered sections of 42 U.S.C.). Title I of the MMA amended the Medicare Act by enacting the "Voluntary Prescription Drug Benefit Program," effective January 1, 2006. *See* 42 U.S.C. §§ 1395w-101 to 152. Commonly referred to as "Medicare Part D," the program provides comprehensive Medicare coverage of outpatient prescription drugs. Id.

Medicare Part D is a managed care program that uses private health care organizations to sponsor prescription drug benefit plans. The government contracts with private entities to deliver Medicare services through Medicare Advantage Plans ("MAPs") and Medicare prescription drug plans ("PDPs"). The Secretary of Health and Human Services ("Secretary"), through the Centers for Medicare and Medicaid Services ("CMS") is charged with implementing and administering the MMA. The MMA contains provisions for grievances and coverage determinations, *see* 42 U.S.C. § 1395w-104(f)-(h), and these statutory mandates are implemented by the regulatory scheme adopted by CMS, *see* 42 C.F.R. Ch. IV, Subch. B, Pt. 423, Subpts. M, N, & U.

While coverage determinations are subject to administrative reconsideration and appeal, *see* 42 U.S.C. § 1395w-104(h), as well as judicial review, § 1395w-22(g)(5), the same is not true of grievances. The regulations promulgated by CMS define grievances as "any complaint or

Page 5 – REPORT AND RECOMMENDATION

dispute, other than one that involves a coverage determination, expressing dissatisfaction with any aspect of the operations, activities, or behavior of a Part D plan sponsor, regardless of whether remedial action is requested." 42 C.F.R. § 423.560. Part D establishes grievance procedures, 42 C.F.R. § 423.564, which apply to any non-coverage-determination dispute between a PDP sponsor and its enrollees about any operations, activities, or behavior of the PDP sponsor. *See* 42 C.F.R. §§ 423.560, 423.564. The regulations require that a PDP sponsor provide "meaningful procedures for timely hearing and resolving grievances," subject to certain standards outlined by CMS. 42 C.F.R. § 423.564(a), (e)-(g). PDP sponsors must maintain records of all grievances and their dispositions, and they must report all grievances to CMS. 42 C.F.R. § 423.564(g); Medicare Part D Reporting Requirements, CMS, Jan. 25, 2006. CMS then has the authority to impose "intermediate sanctions," including fines of up to $100,000, on PDP sponsors for violations including misrepresentation and failure to provide medically necessary items. 42 C.F.R. §§ 423.750, 423.752 (2005). These grievance procedures do not allow an enrollee to appeal an adverse determination to an Administrative Law Judge or to seek judicial review. *See* 42 C.F.R. § 423.562(b)(1), (4).

The limited facts alleged in the Complaint amount to a claim that the defendants refused to fill plaintiff's prescriptions for no reason other than a personal dislike for him. In other words, plaintiff is expressing his dissatisfaction with the "operations, activities, or behavior of a Part D plan sponsor." Montgomery's claim is therefore a grievance, and he should have filed a grievance to seek resolution of his complaints. Accordingly, the claims set out in the Complaint are preempted by the grievance procedure.

Furthermore, to the extent that the Complaint may be construed as attempting to state a common law claim for fraud or violation of any state law, those claims are also preempted by the

Page 6 – REPORT AND RECOMMENDATION

grievance procedure. The MMA provides that federal standards shall supersede all state laws and regulations with respect to PDP plans, except for standards relating to licensure and solvency. *See* 42 U.S.C. §§ 1395w-26(b)(3), 1395w-112(g) (2006). As explained by CMS, the MMA reversed the old presumption that a state law was not preempted if it did not conflict with a Medicare managed care requirement and did not fall into one of the four categories where preemption was presumed, and provided that state laws are *presumed* to be preempted unless they relate to licensure or solvency. *See* CMS, 70 Fed. Reg. 4194-01, 4319 (January 28, 2005) (emphasis added). Even if the Complaint may be read as attempting to state a claim for negligence or intentional infliction of emotional distress arising out of defendants' failure to fill plaintiff's prescriptions, neither of those claims relate to licensure or solvency. Those claims are therefore preempted by the regulatory grievance procedure and may not be pursued by the plaintiff in this court.

## RECOMMENDATION

For the reasons stated above, plaintiff's claims lack an arguable basis either in law or in fact, rendering them legally frivolous and requiring that his Complaint be dismissed. Granting plaintiff leave to amend would be futile because the defect in plaintiff's pleading cannot possibly be cured by the allegation of additional facts. Therefore, this action should be dismissed with prejudice and without leave to amend. Plaintiff's motion to proceed *in forma pauperis* should be denied as moot.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

Page 7 – REPORT AND RECOMMENDATION

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due by March 2, 2012. If objections are filed, any response to the objections is due by March 19, 2012.*** See FED. R. CIV. P. 72, 6.

DATED this _____ day of February, 2012.

MARK D. CLARKE
United States Magistrate Judge